Argued and submitted November 9, 1981, affirmed March 8,
reconsideration denied April 13,
petition for review denied May 18, 1982 (293 Or 146)

In the Matter of the Estate of
Albert Earl Campbell, Deceased.

GERKING,
*Respondent,*

*v.*

WOLFF et al,
*Appellants.*

(No. P-7-80, CA A20760)

641 P2d 610

Thomas C. Howser, Ashland, argued the cause for appellants. On the brief were Gregory A. Parker, and Cottle, Howser & Cue, Ashland.

Timothy C. Gerking, Medford, argued the cause for respondent. With him on the brief was Brophy, Wilson & Duhaime, Medford.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

■    Defendants appeal from the decree of the circuit court determining that Albert Earl Campbell and Roberta Marvine Campbell, husband and wife, died simultaneously in a boating accident at Hyatt Lake on September 22, 1979, and directing distribution of their jointly held property and life insurance proceeds pursuant to the Uniform Simultaneous Death Act. ORS 112.575 to 112.645. Both parties died intestate. Mr. Campbell was survived by three sisters and a brother, and Mrs. Campbell was survived by the defendants: a daughter and a son from a prior marriage. The sole issue is whether there is "sufficient evidence" under the Act to establish that one of the Campbells survived the other. Plaintiff contends that there is not; defendant contends that there is. We review *de novo, see In re Shepherd's Estate,* 152 Or 15, 41 P2d 444, 49 P2d 448 (1935); *Johnson v. Johnson,* 27 Or App 461, 464 n 2, 556 P2d 969, *rev den* (1977), and affirm.

On September 22, 1979, Mr. and Mrs. Campbell were out in a small boat on Hyatt Lake near Ashland. Between 2:30 and 3 p.m., the boat capsized near the middle of the lake approximately 250 to 300 yards from the western shoreline. No one saw the capsizing or either of the Campbells alive in the water. The deputy sheriff called to the scene testified that before his arrival at the lake at about 5 o'clock the Campbells' boat had been pulled ashore and numerous people were searching the lake for the Campbells. He began a ground search along the shoreline; however, the Campbells were not located before nightfall, and all efforts were temporarily abandoned.

The next morning at approximately 10:30 a.m. the body of Mrs. Campbell was found 25 yards from the western shoreline. She was clothed in pants, a shirt and jacket and shoes; the glasses which she normally wore were not found. During the ensuing three days, various items from the Campbells' boat were found on the western shoreline and also in the southern area of the lake. On September 26, 1979, the body of Mr. Campbell was located west of the area where the boat was believed to have capsized. His body was clad in heavy denim pants, boots, a coat, sweater and a shirt; his glasses were in place.

The evidence indicates that Mrs. Campbell, 61, although mildly obese, was in better health, generally, than her husband. Mr. Campbell, 59, had suffered a heart attack several years earlier and immediately prior to his death was suffering from emphysema, and his physical activities had become somewhat curtailed in the past few years. It was undisputed that Mrs. Campbell could swim; however, there was a conflict in the testimony as to Mr. Campbell's swimming ability.[1]

An autopsy was performed on each of the Campbells. The two pathologists who performed the autopsies testified. Dr. Tinsley, who examined Mr. Campbell's body, stated that the cause of death was compatible with drowning. Although Dr. Tinsley noted that the autopsy revealed some arteriosclerotic disease affecting the coronary arteries and the septum of the heart, he testified that there was no evidence of a stroke or coronary accident. A blood alcohol test measured Mr. Campbell's blood alcohol content as .21 at the time of the death. Dr. Tinsley could not determine accurately the time of Mr. Campbell's death. He reviewed Mrs. Campbell's autopsy report, but was unable to form an opinion as to the sequence of the Campbells' deaths.

Dr. Newland, who performed Mrs. Campbell's autopsy, testified that the cause of her death was asphyxiation by drowning. Hyperinflation, hyperemia and edema of the lungs, all commonly associated with drowning, were present. Further, the autopsy indicated hardened cerebral and coronary arteries and severe hardening of the arteries in the aorta and its main branches. The extremities evidenced small multiple contusions. No test for blood alcohol content was taken. On the basis of his findings, Dr. Newland could not determine the time of Mrs. Campbell's death. After comparing the two autopsy reports, Dr. Newland further testified that any opinion as to which of them died first would be speculative.

---

[1] Mr. Campbell's brother and brother-in-law testified that Mr. Campbell could swim quite well in his youth. Other friends and relatives, however, testified that either Mr. Campbell had never been seen swimming or that he had stated that he did not know how to swim. No one had seen Mr. Campbell swim since before World War II.

Dr. Weldon Walker, an internist specializing in cardiovascular disease, testified as an expert witness for defendants. He expressed the opinion that, based on the physical conditions of the Campbells, their respective swimming ability, the location of the bodies when found,[2] the autopsy findings and other testimony adduced at trial,[3] it was "highly probable" that Mrs. Campbell had survived Mr. Campbell. He reasoned that the findings of hyperinflation, hyperemia and edema in Mrs. Campbell's lungs, coupled with the contusions on her extremities, indicated a violent death struggle. Similar findings were not made in Mr. Campbell's autopsy. In Dr. Walker's opinion, the absence of signs of a struggle, together with Mr. Campbell's past coronary disease, which increased the risk of sudden death from any sudden stress, indicated to him either that Mr. Campbell did not have the capacity to struggle upon entering the water or that he experienced cardiac arrhythmia[4] when the boat capsized. In either event, in the doctor's opinion, he died immediately.

■    ORS 112.595[5] of the Uniform Simultaneous Death Act provides:

---

[2] Mrs. Campbell was found in water approximately six feet deep, while Mr. Campbell was found in water approximately 12 feet deep.

[3] Defendants attach great significance to the fact that Mrs. Campbell's glasses, normally attached around her neck on a chain, were not found with her body, whereas Mr. Campbell's glasses, not attached by a chain, were still in place when his body was found. From this defendants conclude that Mrs. Campbell lost her glasses in a strenuous death struggle and, thus, survived Mr. Campbell, whose glasses remained intact as he passively sank to his death. That argument, however, does not consider the possibility that Mrs. Campbell fought vigorously for her life and drowned *before* Mr. Campbell entered the water.

[4] Cardiac arrhythmia is a disturbance in the heart beat which could be fatal, yet be undetectable in an autopsy.

[5] Besides property held in joint tenancy, Mr. Campbell was insured under two life policies which named his wife as beneficiary. ORS 112.615 provides:

"Where the insured and the beneficiary in a policy of life or accident insurance have died and there is no sufficient evidence that they have died otherwise than simultaneously the proceeds of the policy shall be distributed as if the insured had survived the beneficiary, except if the policy or any interest therein is community property of the insured and his spouse, and there is no alternative beneficiary except the estate or personal representatives of the insured, the proceeds of such interest shall be distributed as community property under ORS 112.605."

"(1) Where there is no sufficient evidence that two joint tenants or tenants by the entirety have died otherwise than simultaneously the property so held shall be distributed one-half as if one had survived and one-half as if the other had survived. If there are more than two joint tenants and all of them have so died the property thus distributed shall be in the proportion that one bears to the whole number of joint tenants.

"(2) The term 'joint tenants' includes owners of property held under circumstances which entitled one or more to the whole of the property on the death of the other or others."

Under that statute, there is neither a presumption of survivorship nor a presumption of simultaneous death. The statute becomes applicable when two or more persons have died under circumstances where there is insufficient evidence that one of them outlived the other. The burden of proof is on the party whose claim depends upon survivorship. *In re Estate of Cruson,* 189 Or 537, 561-62, 221 P2d 892 (1950).

■ Here, defendants have the burden of proof. They make a reasonable argument, based on circumstantial evidence aided by an expert's opinion, that Mrs. Campbell survived her husband. They contend that, in addition to Mrs. Campbell's being in better health than Mr. Campbell, evidence of her having struggled and doubt as to Mr. Campbell's ability to swim, the fact that Mrs. Campbell's body surfaced three days before that of Mr. Campbell, and was found close to shore in shallow, warm water,[6] supports the inference that Mrs. Campbell attempted to swim ashore after Mr. Campbell expired in the water. On the basis of that inference, they contend Mrs. Campbell outlived her husband. Although circumstantial evidence may be sufficient to establish survivorship, *In re Bucci's Will,* 57 Misc 2d 1001, 293 NYS2d 994 (1968); *In re Estate of Pyke,* 199 Kan 1, 427 P2d 67 (1967), the evidence supporting the

---

[6] Defendants' expert witness testified that two bodies entering the water at the same time and submersing at the same time would surface at approximately the same place and time, because the temperature of the water affects the rate at which gaseous diffusion occurs. Based on this theory, defendants argue that Mrs. Campbell's body surfaced three days earlier than that of Mr. Campbell, because she succumbed in shallower, warmer water.

inference we are asked to draw is in conflict,[7] permitting several different inferences. All we can say is that defendants' contention that Mrs. Campbell attempted to swim ashore after Mr. Campbell's death is a plausible explanation; however, there are numerous scenarios, equally plausible, of the events, some of which would result in Mr. Campbell's having survived Mrs. Campbell.

■■■■ We may not speculate as to which scenario is the most probable.[8] As the court stated in *In re Estate of Cruson, supra:*

"In trying to determine whether one survived the other, we cannot engage in conjecture or guesswork. We cannot balance probability against probability. Survivorship is a question of fact which must be proved by evidence. * * *" 189 Or at 567.

We conclude that defendants have not sustained their burden proving that Mrs. Campbell survived her husband.

---

[7] Contrary to defendants' expert witness, the two pathologists did not think it was significant that Mrs. Campbell was found three days earlier than Mr. Campbell. Rather, they testified that any number of variables could account for the bodies surfacing at different times, including the Campbells' relative body weights, clothing (Mr. Campbell had on heavier clothing) and water currents. All of the experts agreed that a female is likely to surface before a male, because of the greater fat content normally found in the female body. The testimony also indicated that there were different currents in the lake which could account for the different location of the Campbells' bodies when found. That factor apparently accounted for the different location of the various items from the Campbells' boat retrieved from the lake.

Similarly, the expert testimony was in conflict as to the significance of the hyperinflation, hyperemia and edema found in Mrs. Campbell's lungs and absence of those findings in Mr. Campbell's lungs. Defendants' expert concluded that the findings supported a violent death struggle for Mrs. Campbell and a passive submission for Mr. Campbell. Dr. Tinsley, however, testified that the edema found in Mrs. Campbell could have been caused by heart failure or the arterial embalming process which occurred prior to the autopsy. Dr. Newland testified that the hyperemia and edema were nonspecific findings commonly associated with drownings. Neither pathologist felt that those findings supported the conclusion that Mrs. Campbell survived Mr. Campbell. Additionally, we find no significance in the alcohol content found in Mr. Campbell's blood; a similar test was not conducted on Mrs. Campbell.

[8] It is just as plausible that Mrs. Campbell fell into the water and Mr. Campbell capsized the boat in an effort to save her, but only after she had drowned; or that Mr. Campbell, realizing his physical limitations, might have held onto the side of the capsized boat and remained there until after Mrs. Campbell drowned and his arms grew too weary to continue; or Mr. Campbell might have become disoriented after the boat capsized and begun swimming in another direction, drowning after Mrs. Campbell, his body drifting to the location where it was recovered. As plaintiff notes, "[T]he possibilities are truly endless."

Any other conclusion would be speculation or conjecture.[9]
Accordingly, the decree of the circuit court is affirmed.

Affirmed.

---

[9] Defendants, relying on *Azvedo v. Benevolent Soc. of Cal.*, 125 Cal App 2d Supp 894, 270 P2d 948 (1954), contend that unless the evidence supports the conclusion that decedents expired at the same instant, the Uniform Simultaneous Death Act does not apply and the court must determine which one survived the other, no matter how difficult the task. Such a literal interpretation of the Act would render it almost useless, and it has not been adopted by the Oregon court, or by the majority of courts. Rather, it has been construed to mean that if it cannot be determined by "sufficient evidence" which decedent died first, the Act becomes applicable. *In re Estate of Cruson, supra; see Liberty Nat. Life Ins. Co. v. Brown*, 119 F Supp 920 (DC Ala 1954); *In re Estate of Moran*, 67 Ill App 3d 576, 24 Ill Dec 312, 385 NE2d 79, *aff'd* 77 Ill 2d 147, 32 Ill Dec 349, 395 NE2d 579 (1978); *Smith v. Smith*, 361 Mass 733, 282 NE2d 412 (1972).