### 76347. DAUGHERTY v. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY.
(371 SE2d 677)

BANKE, Presiding Judge.

Daugherty sued the Metropolitan Atlanta Rapid Transit Authority (MARTA), alleging that it had unlawfully discharged him from his employment as a transit policeman in violation of the Georgia Equal Employment for the Handicapped Code, OCGA § 34-6A-1 et seq. He also sued a physician retained by MARTA, Dr. Tom S. Howell, Jr., seeking damages for medical malpractice and tortious interference with his employment based on a medical opinion the latter had given to MARTA, upon which MARTA had relied in discharging him. MARTA was granted summary judgment in the action, prompting Daugherty to file this appeal.

The appellant applied for employment as a MARTA transit policeman in 1985, having been employed as a security guard at Emory University since 1980. On September 12, 1985, he underwent a pre-employment physical examination, during the course of which he revealed that he was taking medication for a seizure disorder. A notation to that effect was placed on his examination form; and the printed designation, "Class C, Requires Evaluation by Review Committee," was circled accordingly. Included as part of the appellant's application was a letter from his neurologist, Dr. Wallace, stating: "I have treated Mr. Mark Daugherty since 1971. He has a seizure disorder that is under good control with medication. He has not had a seizure since 1982. . . . I feel that his seizures are in excellent control and feel that he is employable without any limitations."

The appellant was offered employment as a MARTA transit policeman and began work on September 30, 1985. On or about that

same date, MARTA's employment manager, Ms. Yvonne Powers, reviewed his application file, observed that he had received a "Class C" rating on his pre-employment physical, and consequently arranged, as a matter of course, for him to undergo further medical evaluation by Dr. Howell, a specialist in occupational medicine whose clinic was under contract with MARTA to provide such medical services. In the meantime, the appellant's supervisor was instructed to remove him from active duty as a transit policeman, and the appellant was given a temporary assignment in the radio room.

Dr. Howell interviewed the appellant on October 24, 1985. The following day, he wrote a letter to Ms. Powers noting that the appellant was taking 1800 mg. of Tegratol and 240 mg. of phenobarbitol daily and stating that his "demeanor suggest[ed] a certain amount of lethargy." Asked during his deposition to explain this remark, Dr. Howell responded that during the course of his interview with the appellant, he was "almost appalled by the fact that Mr. Daugherty was sitting in the chair directly across from me and almost went to sleep . . . , in my opinion, on two occasions while I was discussing him." Dr. Howell concluded in his letter to Ms. Powers that he "would have some difficulty . . . accepting [the appellant] as a security guard or transit policeman which would involve operating a company vehicle and carrying a weapon." He suggested that additional information be obtained from the appellant's personal physician, Dr. Wallace, and also from Dr. Donald Bickers, whom he described as "an authority with this type of problem."

Dr. Howell testified that he subsequently discussed his concerns with Dr. Bickers, a neurosurgeon with special expertise in epilepsy, and that Dr. Bickers supported his opinion that a person taking the type and amount of medication being taken by the appellant should not be carrying a gun in a law enforcement capacity. On December 5, 1985, Dr. Howell wrote a second letter to Ms. Powers, informing her of his consultation with Dr. Bickers and stating: "At the present time, based on information available, I would not consider Mr. Daugherty to be a satisfactory candidate to perform work as a transit policeman." On the basis of this adverse recommendation, the appellant's employment was terminated. *Held*:

OCGA § 34-6A-4 (a) specifies, in pertinent part, that "[n]o employer shall fail or refuse to hire, discharge, or discriminate against any handicapped individual with respect to wages, rates of pay, hours, or other terms and conditions of employment because of such person's handicap *unless such handicap restricts that individual's ability to engage in the particular job or occupation for which he or she is eligible. . . .*" (Emphasis supplied.) Similarly, subsection (b) of § 34-6A-3 specifies: "Nothing in this chapter shall be construed to prohibit the rejection of an applicant for employment on the basis of: (1)

A handicap which interferes with a person's ability to perform assigned job duties adequately. . . ." Finally, subsection (c) of OCGA § 34-6A-3 specifies: "Nothing in this chapter shall be construed to prevent or otherwise make illegal any employment decision affecting any person where such decision is based upon an employer's good faith reliance upon a professional opinion rendered by a licensed physician, rehabilitation specialist, psychologist, physical therapist, dentist, or other similar licensed health care professional concerning that person."

In *Spicer v. Martin-Brower Co.*, 177 Ga. App. 197 (338 SE2d 773) (1985), this court held that "in the limited instance where conflicting professional opinions are properly before the employer, questions of fact may be raised whether the employer acted in good faith in relying on one particular professional opinion, in view of the possibility that the employer's subjective selection of one opinion in preference to another may have been the result of a discriminatory motive." However, the court went on to hold that where the employer presented evidence in support of its motion for summary judgment indicating that it had not acted out of animosity in relying upon the medical opinion of its own medical consultant in preference to a contrary opinion offered by the employee's personal physician, but had instead acted out of concern for potential safety problems posed by the employee's medical condition, the burden shifted to the employee to come forward with contrary evidence from which it could be inferred that a discriminatory motive was in fact involved. Because no such contrary evidence was offered, the grant of the employer's motion for summary judgment was affirmed.

In the case before us, as in *Spicer*, the employer has submitted evidence tending to establish without dispute both that its employment decision was made in reliance upon the professional recommendation of a licensed physician and that its preference of that physician's opinion over the contrary opinion of the employee's personal physician was based upon safety concerns rather than upon an unlawful, discriminatory motive. Indeed, as pointed out by MARTA, the safety concerns involved in the present case are even more substantial than those involved in *Spicer* in that they implicate the public at large rather than merely the appellant and his fellow employees. While the appellant contends that material issues of fact are created by certain conflicts in the testimony of Ms. Powers and by evidence that MARTA did not follow its own established procedures with respect to the convening of its Medical Review Committee, none of these purported inconsistencies or irregularities suggests the existence of an unlawful, discriminatory motive. Instead, it appears without dispute that the case was referred to Dr. Howell for evaluation as a matter of course in response to the "Class C" designation received by the

appellant on his pre-employment physical and that the subsequent decision to terminate his employment as a transit policeman was made in direct reliance upon Dr. Howell's evaluation. A dispute as to an immaterial fact or one which has no legal significance to the outcome of the case does not preclude summary judgment. See *Barnett Mtg. Trust v. Woods Mill, Ltd.*, 151 Ga. App. 133 (259 SE2d 140) (1979); *Wood v. Metro. Atlanta Girls' Club*, 141 Ga. App. 473 (233 SE2d 862) (1977).

*Judgment affirmed. Birdsong, C. J., Deen, P. J., McMurray, P. J., Carley, Sognier, and Pope, JJ., concur. Benham and Beasley, JJ., dissent.*

BEASLEY, Judge, dissenting.

OCGA § 34-6A-1 et seq., the Georgia Equal Employment for the Handicapped Code, implements the public policy of this State to protect those with handicaps from discriminatory employment practices. Ga. L. 1981, p. 1843, § 1. "The statute is obviously a balancing of the interests of society in providing an opportunity for handicapped people to work, and the interests of employers to maintain the freedom to hire and maintain employees who can best perform the duties of a particular job. . . . An employer is not required under this law to hire or maintain a person who cannot perform the duties of the job because of that person's handicap." *Dugger v. Delta Air Lines*, 173 Ga. App. 16, 18 (325 SE2d 394) (1984).

OCGA § 34-6A-3 permits inquiries to job applicants regarding the existence and extent of a handicap and allows rejection of a prospective employee who has a handicap which interferes with a person's ability to perform job duties adequately. Subsection (c) expressly frees from constraint employment decisions which are "based upon an employer's good faith reliance upon a professional opinion rendered by a licensed physician" concerning the handicapped person.

The question here is whether MARTA, which stands on subsection (c) for its defense, established as a matter of law that its decision was so based, so that it is entitled to judgment without further inquiry. Dr. Howell's motion for summary judgment, with respect to claims of medical malpractice and tortious interference with employment contract rights, was denied.

We must start with the formula to determine the existence of a plaintiff's prima facie case on trial which was adopted in *Shaw v. W. M. Wrigley, Jr. Co.*, 183 Ga. App. 699, 700 (1) (359 SE2d 723) (1987). In order to establish disparate treatment plaintiff must show that he 1) is a member of the protected class, 2) meets the objective qualifications of the job, 3) was directly or constructively terminated, and 4) there was a nexus between the termination and the handicap.

Once these criteria have been met, "a rebuttable presumption arises that the employer/defendant unlawfully discriminated against the plaintiff."

The employer must set forth a legitimate, nondiscriminatory reason for plaintiff's rejection or discharge. "The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if defendant's evidence raises a genuine issue of fact whether it discriminated against plaintiff." Plaintiff then must show "the proffered reason was not the true reason for the employment decision." Id. at 700.

*Spicer v. Martin-Brower Co.*, 177 Ga. App. 197 (1) (338 SE2d 773) (1985), recognized that "where conflicting professional opinions are properly before the employer, questions of fact may be raised whether the employer acted in good faith in relying on one particular professional opinion, in view of the possibility that the employer's subjective selection of one opinion in preference to another may have been the result of a discriminatory motive."

During the trial the burden of persuading the factfinder that defendant discriminated against plaintiff remains with plaintiff at all times. *Shaw*, supra at 700. On motion for summary judgment, however, the burden rests upon defendant as movant to establish that no genuine issue of fact exists and here, because it relies upon the good faith defense, that it acted in good faith in relying upon Dr. Howell's opinion, as a matter of law. *Jacobsen v. Muller*, 181 Ga. App. 382, 384 (4) (352 SE2d 604) (1986). "Moreover, where the evidence on summary judgment is ambiguous or doubtful, the party opposing the motion is to be given the benefit of all reasonable doubts and all favorable inferences that can be drawn from the evidence." *Fiumefreddo v. Scudder*, 252 Ga. 279, 283 (2) (313 SE2d 683) (1984).

Several facts stand out. Daugherty was certified by the Georgia Peace Officer Standards and Training Council (POST) as a law enforcement officer entitled to carry a weapon and had been employed in a police function by Emory University since 1980. He had a seizure disorder (epilepsy) which first manifested itself while he was an adolescent and was controlled by medication. The most recent onset was in 1982. After his discharge by MARTA, Daugherty's certification was continued after a POST hearing which found he was not unable to perform as a peace officer. He was required to keep POST aware of his medical condition by means of an annual medical report.

Dr. Howell's first letter which stated that plaintiff's "demeanor suggests a certain amount of lethargy," and his second letter which referred to Daugherty's "mild lethargy," stand in stark contrast to his testimony that he was "almost appalled" that in the interview Daugherty almost went to sleep. We must take the most unfavorable version of these variations. *Lynch v. Waters*, 256 Ga. 389 (349 SE2d 456)

(1986); *Prophecy Corp. v. Charles Rossignol, Inc.,* 256 Ga. 27 (343 SE2d 680) (1986). Moreover, Daugherty at the time was just coming off the night shift at Emory.

Dr. Howell stated in his first letter to Ms. Powers that he wished to obtain additional information from Dr. Wallace, a neurologist who had treated Daugherty since 1971 and who had unequivocally recommended Daugherty's employment, but Dr. Howell then made no effort to consult with Dr. Wallace. Although a specialist in occupational medicine, Dr. Howell admitted that he was not an expert on seizure disorders or their treatment. Thus, he informally consulted Dr. Bickers who never personally saw Daugherty. Ms. Powers accepted Dr. Howell's recommendation set out in his second letter without question and made no effort to determine why his view and Dr. Wallace's were diametrically opposed. She made no effort to follow MARTA procedure and the medical review committee was not convened to make a determination whether to adopt Dr. Howell's findings. Instead of having the committee pass upon the problem, it was ignored and bypassed without explanation.

The evidence does not require the interpretation that "it appears without dispute the case was referred to Dr. Howell for evaluation as a matter of course in response to the 'Class C' designation received by the appellant on his pre-employment physical. . . ." On deposition Dr. Howell testified that "[v]ery seldom are we asked to review a case" from the separate clinic which initially examined Daugherty. He related: "Class C, by definition, means that it should be reviewed by a medical review committee." That committee was "formed by MARTA primarily to insure that we did not discriminate against someone under EEOC." Dr. Howell sat on the committee but had no vote. The committee was functioning and within the last month had considered a Class C condition. Dr. Howell admitted that he agreed reluctantly to see Daugherty, perferring that "it take its normal course which was that it should go before the medical review committee."

Discrimination is often subtle and good faith involves intent. In considering the totality of circumstances, several questions related to good faith are left unresolved here. One is, why was there a disregard of the medical review committee procedure called for by MARTA's own guidelines? In the absence of any explanation, MARTA did not establish as a matter of law a good faith reliance on Dr. Howell's opinion, especially in the face of the apparently contrary opinion of the employee's long-standing personal physician.

Although Dr. Howell expressed the need to consult with Dr. Wallace, the applicant's treating physician, he never did so and any mention of Wallace's report was omitted from the second letter. Should this omission have been considered by a diligent employer who was seeking in good faith to make a non-discriminatory determination

with regard to plaintiff's handicap?

Ms. Powers never questioned Dr. Howell about the opposing view of Dr. Wallace nor made any effort to obtain information from Dr. Wallace regarding the basis of his opinion or its relationship to the particular job requirements in question.

Nor did Dr. Bickers, upon whose judgment Dr. Howell relied for his own final opinion, ever examine applicant or his medical record. Dr. Howell discussed the case with him and wrote to Ms. Powers that "Dr. Bickers agreed that Mr. Daugherty probably should not be a security guard and certainly stated that he felt that he [Daugherty] should not be carrying a gun." Where there are conflicting opinions, one based upon personal examination by the treating physician and the other without any personal contact, can an employer blindly rely upon one to the exclusion of the other without any further evaluation?

All of these factors raise inferences of a lack of good faith reliance on Dr. Howell's opinion and undermine the assertion that there was good faith as a matter of law. In the current posture of the case, where the evidence must be construed in favor of plaintiff as the party opposing the motion, summary judgment in favor of MARTA should not have been granted.

I am authorized to state that Judge Benham joins in this dissent.

DECIDED JULY 15, 1988.

*Kathryn M. Zickert*, for appellant.
*Michael G. Frick, Melinda K. Wells*, for appellee.