# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00231-SCT

*IN THE MATTER OF THE ESTATE OF*
*BYRON KEITH MILLER, DECEASED,*
*KENNETH MILLER, ADMINISTRATOR:*
*JEANETTE PAGE, ADMINISTRATRIX*
*OF THE ESTATE OF MARTHA*
*JEANETTE PAGE MILLER*

*v.*

*ANN H. MILLER, GUARDIAN*
*OF THE ESTATE OF*
*HUNTER KEITH MILLER*

| | |
|---|---|
| DATE OF JUDGMENT: | 1/23/2002 |
| TRIAL JUDGE: | HON. JAMES H. C. THOMAS, JR. |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | SHEILA HAVARD SMALLWOOD |
| | GLENN LOUIS WHITE |
| ATTORNEY FOR APPELLEE: | LEIGH KENNINGTON BERRY |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED - 03/20/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, P.J., AND WALLER AND COBB, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1.     This appeal involves the tragic murder/suicide of a husband and wife where the order of death cannot be determined.  On October 30, 1999, Byron Keith Miller shot his wife Martha Jeanette Page Miller.  Byron then shot himself shortly thereafter. Byron and Martha died from their gunshot wounds, but

the order of their deaths could not be determined. They had no children together, but Byron had a six-year-old son, Hunter Keith Miller, by his ex-wife Ann Miller.

¶2. On December 1, 1999, Kenneth Miller, Byron's father, was appointed administrator of Byron's estate. Jeanette Page, Martha's mother and administratrix of her estate, filed a petition on April 26, 2000, to determine heirship of Byron. Jeanette asserted that Martha's estate should be recognized as an heir at law to Byron's estate thereby entitling it to a child's share. *See* Miss. Code Ann. § 91-1-7 (1994). Jeanette reasoned that since Byron killed Martha, Byron was deemed to have predeceased Martha by virtue of Mississippi's slayer statute, Miss. Code Ann. § 91-1-25 (1994), which would allow Martha's estate to inherit from Byron's estate. Finding that Miss. Code Ann. § 91-1-25 was inapplicable, the learned chancellor entered judgment holding that Hunter Keith Miller was Byron's sole heir at law.

## STANDARD OF REVIEW

¶3. We will not disturb a chancellor's findings unless manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. *In re Estate of Smith*, 827 So. 2d 673, 675 (Miss. 2002); *Miller v. Pannell*, 815 So. 2d 1117, 1119 (Miss. 2002); *Morris v. Morris*, 804 So. 2d 1025, 1027 (Miss. 2002).

**DISCUSSION**

**I.      WHETHER THE CHANCELLOR ERRED IN FINDING THAT THE SLAYER'S STATUTE, MISS. CODE ANN. § 91-1-25, DID NOT PROVIDE THAT THE ESTATE OF MARTHA JEANETTE PAGE MILLER COULD BE RECOGNIZED AS AN HEIR OF BYRON KEITH MILLER.**

¶4.      Under the Mississippi slayer's statute, a slayer cannot inherit from the victim and is deemed to have predeceased his victim for succession purposes:

> If any person wilfully cause or procure the death of another in any way, he shall not inherit the property, real or personal, of each other; but the same shall descend as if the person so causing or procuring the death had predeceased the person whose death he perpetrated.

Miss. Code Ann. § 91-1-25.  Jeanette argues that since Byron is deemed to have predeceased Martha under Miss. Code Ann. § 91-1-25, the order of death was established for purposes of distributing Byron's estate by intestate succession.  As a result, Martha's estate would be entitled to a child's share allowed to a widow under Miss. Code Ann. § 91-1-7 (1994).

¶5.      We have held that one who wilfully causes the death of another is barred from participating in the victim's estate. *Genna v. Harrington*, 254 So. 2d 525, 527 (Miss. 1971).  We have not, however, addressed the question of whether a victim's estate can participate in his slayer's estate.  Slayer's statutes are strictly construed and narrow in purpose:

> Many states have enacted "slayer statutes" intended to prevent a person who has feloniously caused the death of a decedent from inheriting or receiving any part of the estate of that decedent.  These statutes intend to govern the inheritance rights of a claimant who has caused the death of a decedent by a specific statute, rather than by general equitable principles. *The sole purpose of a "slayer statute" is to prevent the slayer from benefitting from the death of the victim or profiting from the wrongdoing*.

3

26B C.J.S. *Descent and Distribution* § 57, at 362-63 (2001) (footnotes omitted & emphasis added).

¶6.     For example, this strict construction was applied in ***Mothershed v. Schrimsher***, 412 S.E.2d 123 (N.C. Ct. App. 1992), a murder/suicide case involving a similar slayer's statute where a son killed his mother and each was the other's sole heir.  The North Carolina Court of Appeals held that the victim was not entitled to participate in the slayer's estate:

> The Statute's plain language clearly bars the slayer from participating in the victim's estate.  *Nowhere does the Statute authorize the victim to participate in the slayer's estate*.  That may or may not occur.  The Statute does not indulge in the fiction that the slayer's date of death is other than the actual date of death, but merely establishes a presumption to exclude the slayer.  *Had the Statute been enacted for the dual purpose of adjudicating slayer status and for altering the intestate succession of both the slayer and victim, it would have so stated*.
>
> Our reading of the Slayer Statute does not work an injustice in the case at bar.  Plaintiff argues that the coroner's report indicates that the order of death is uncertain and survivorship will, therefore, be difficult to prove.  Survivorship is often difficult to prove but the Slayer Statute was not enacted to ease this burden.  *The Statute is one of exclusion, not of inclusion*.   When applicable, it acts to exclude a slayer from participation in the victim's estate.  *It does not act to include the victim in the slayer's estate due to the slayer's crime.  This would contradict the Statute's stated purpose*.

412 S.E.2d at 125-26 (emphasis added & citations omitted).  We find this resolution persuasive and adopt the same in Mississippi.  Martha's estate cannot be declared an heir to Byron's estate by virtue of Section 91-1-25.

**II.     WHETHER THE CHANCELLOR ERRED IN FAILING TO APPLY THE UNIFORM SIMULTANEOUS DEATH LAW, MISS. CODE ANN. §§  91-3-1 TO -15 (1994).**

4

¶7.     Jeanette next argues that the chancellor erred in failing to apply the provisions of the Uniform Simultaneous Death Law (USDL), Miss. Code Ann. §§ 91-3-1 to -15 (1994), because the death certificates of Martha and Byron both indicate a time of death of 9:45 a.m. on October 30, 1999. However, at approximately 10:00 a.m., Byron called his ex-wife Ann stating that he had shot Martha. At approximately 10:03 a.m., Ann contacted the Lamar County Sheriff's Department, deputies of which arrived at 10:12 a.m. to find both Martha and Byron dead. As will be explained, Jeanette is correct in her assertion that the USDL applies; however, her interpretation that Miss. Code Ann. § 91-3-5 deems Martha an heir to Byron's estate is incorrect.

¶8.     Though it was enacted in 1956, this is our first opportunity to apply and interpret the dictates of the USDL. In adopting the USDL, the Mississippi Legislature recognized the need for consistent application and stated that the statute "shall be so construed and interpreted as to effectuate its general purpose to make uniform the law in those states which enact the Uniform Simultaneous Death Law." Miss. Code Ann. § 91-3-3. As such, we will rely on the jurisprudence of our sister states that have addressed the application of the USDL. *See* Elizabeth T. Tsai, Annotation, *Construction, Application, and Effect of Uniform Simultaneous Death Act*, 39 A.L.R.3d 1332 (1971).

¶9.     The main provision of the USDL states, "Where the title to property or the devolution thereof depends on priority of death and there is no sufficient evidence that the persons have died otherwise than simultaneously, the property of each person shall be disposed of as if he had survived, except as provided otherwise in this chapter." Miss. Code Ann. § 91-3-5. Our analysis requires first a determination of whether there is "sufficient evidence" Byron and Martha "died otherwise than simultaneously" and, if not, the proper disposition under the USDL.

### Sufficiency of Evidence of Order of Death

¶10.    Courts have consistently held that the burden of proof for "sufficient evidence" of survivorship is a preponderance of the evidence. *Fiumefreddo v. Scudder*, 313 S.E.2d 683, 686 (Ga. 1984);*In re Estate of Moran*, 395 N.E.2d 579, 581 (Ill. 1979);*In re Estates of Perry*, 40 P.3d 492, 493 (Okla. Ct. App. 2001).  For the USDL to apply, there must be a lack of sufficient evidence to prove that Martha predeceased Byron, or vice-versa.

¶11.    In the instant case, there is insufficient proof to establish an order of death.  While Ann testified that Byron called her at approximately 10:00 a.m. and told her he had shot Martha, there is no evidence confirming that she died before him.  The fact that Byron shot Martha before he shot himself might lead one to presume that she succumbed to her injuries prior to Byron succumbed to his; however, the USDL does not allow presumptions of survivorship:

> No presumptions as to survivorship as between persons killed in a common disaster arise under the act, except possibly in the case of death of a beneficiary and donor in a common disaster or in case of beneficiaries in life or accident policies.  Also, there is no presumption that the deaths were simultaneous, although it has been stated that the act creates a presumption that the persons died simultaneously.  The burden of proof is on the party whose claim depends on survivorship to establish the fact.

25A C.J.S. *Death* § 16, at 179 (2002).  There being no presumption in which we can indulge as to order of death and no sufficient evidence indicating survivorship, the USDL governs the distribution of Byron's estate.

## Distribution Under the USDL

¶12.    Jeanette's interpretation of the Section 91-3-5 would deem Martha an heir at law of Byron's estate and not exclude her.  She cites no authority in support of such an interpretation.  However, the chancellor was correct in his finding that the USDL would eliminate both Byron and Martha as heirs to each other's

estate. As quoted above, if the USDL applies, "the property of each person shall be disposed of as if he had survived . . . ." Miss. Code Ann. § 91-3-5.

¶13. The Kansas Court of Appeals' decision in *Estate of Schweizer v. Estate of Schweizer*, 638 P.2d 378 (Kan. Ct. App. 1981), is illuminating as an example of the practical application of a simultaneous death statute. In *Schweizer*, Roland and Nancy Schweizer were killed in an accident in which it was impossible to determine the order of death. 638 P.2d at 379. The administratrix of Nancy's estate filed a claim in Roland's estate for a spouse's share. *Id.* Affirming the trial court's conclusion that neither Nancy nor her distributees had an interest in Roland's estate, the Court gave the following explanation of Kansas's simultaneous death statute in action:

> In this case, the estate of Mrs. Schweizer, because she is presumed to have died before Mr. Schweizer, is not entitled to a share. Likewise, Mr. Schweizer's estate is not entitled to any share of Mrs. Schweizer's estate, because in her probate case she is presumed to have survived him.

*Id. See In re Estate of Parisi*, 765 N.E.2d 123, 127-28 (Ill. App. Ct. 2002) (stating "[e]ach individual's property passes to that individual's relatives and not to the other person's relatives. . . Thus, neither decedent inherits from the other."). *See also In re Spatafora's Estate*, 229 N.Y.S.2d 601 (N.Y. Surr. Ct. 1962). Byron's property was properly distributed as if he had survived Martha, meaning in effect that, for purposes of distribution under the USDL, she predeceased him, thereby leaving Hunter Keith Miller as Byron's sole heir at law.

**III. WHETHER THE CHANCELLOR ERRED IN FAILING TO DETERMINE THAT EQUITY SHOULD DECLARE MARTHA JEANETTE PAGE MILLER TO BE BYRON KEITH MILLER'S SURVIVOR THEREBY ENTITLING HER ESTATE TO AN INTESTATE SHARE UNDER HIS ESTATE.**

7

¶14. Jeanette finally argues that the chancellor failed to determine that equity should declare Martha to be Byron's survivor for succession purposes. However, she cites no authority in support of this position. That aside, courts have consistently held that under the equitable doctrine that "equity follows the law," courts of equity cannot modify or ignore an unambiguous statutory principle in an effort to shape relief. *See, e.g.,* ***Dep't of Transp. v. Am. Ins. Co.***, 491 S.E.2d 328, 331 (Ga. 1997); ***Kuehl v. Eckhart***, 608 N.W.2d 475, 477 (Iowa 2000); ***Guy Dean's Lake Shore Marina, Inc. v. Ramey***, 518 N.W.2d 129, 133 (Neb. 1994); ***Mello v. Woodhouse***, 872 P.2d 337, 341 (Nev. 1994); ***In re Estate of Voeller***, 534 N.W.2d 24, 26 (N.D. 1995). The slayer's statute does not allow a victim's estate to inherit from the slayer's estate, and the USDL does not deem Martha an heir. This argument is without merit.

## CONCLUSION

¶15. We hold that the slayer's statute, Miss. Code Ann. § 91-1-25, does not authorize Martha's estate to participate in Byron's estate. We further hold the Uniform Simultaneous Death Law, Miss. Code Ann. §§ 91-3-1 to -15, is applicable in this case given the lack of sufficient evidence to establish the order of death. As such, the learned chancellor was correct in his conclusion that Hunter Keith Miller is the sole heir at law of Byron Keith Miller, and the chancellor's judgment is affirmed.

¶16. **AFFIRMED.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., COBB, DIAZ, CARLSON AND GRAVES, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**

8