*In re* ESTATE OF PAUL F. LOWRANCE *et al.*, Deceased.—(SANDRA K. ETHERIDGE, Adm'r to Collect of the Estate of Paul F. Lowrance, Petitioners-Appellants, *v.* LAURIEN ANDREWS, Adm'r of the Estate of Mary Ellen Lowrance, Respondent-Appellee.)

Fifth District   No. 77-355

Opinion filed November 21, 1978.

John D. Lackey, of Lackey & Lackey, of Centralia, for appellants.

Miller, Pfaff & Garner, of Salem, for appellee.

Mr. JUSTICE KUNCE delivered the opinion of the court:

This case concerns the deaths of a married couple, Paul F. Lowrance and Mary Ellen Lowrance, and the question is whether the evidence is sufficient for a finding that one survived the other. Both died on December 6, 1975, apparently from gunshot wounds inflicted by their 13-

year-old daughter who was incarcerated at the time of this proceeding. Each had children from prior marriages and left different heirs. The administrator of the estate of Paul F. Lowrance petitioned the Marion County Circuit Court for a declaratory judgment finding that the couple died simultaneously. The administrator of the estate of Mary Ellen Lowrance answered and sought a declaratory judgment finding that her decedent had been the survivor. The declaratory judgment was needed in order to determine heirship in each estate. The Illinois Probate Act (Ill. Rev. Stat. 1975, ch. 3, pars. 41a, 41c) governed the estates' distributions.

"§41a. No Sufficient Evidence of Survivorship.) Where the title to property or the devolution thereof depends upon priority of death and there is no sufficient evidence that the persons have died otherwise than simultaneously, the property of each person shall be disposed of as if he had survived, except as provided otherwise in this Article."

"§41c. Joint Tenants.) Where there is no sufficient evidence that two joint tenants have died otherwise than simultaneously the property so held shall be distributed one-half as if one had survived and one-half as if the other had survived. If there are more than two joint tenants and all of them have so died the property thus distributed shall be in the proportion that one bears to the whole number of joint tenants."

The trial court's task was to determine whether or not the respondent-appellee had met her burden of proving there was sufficient evidence that Mrs. Lowrance had survived Mr. Lowrance. The court entered judgment for declaratory relief that she had. We reverse that judgment.

■■ The burden of proof rested upon the respondent in this proceeding because it was she who alleged the survivorship of her decedent. The degree of proof required of her was a preponderance of evidence. *Prudential Insurance Co. of America v. Spain,* 339 Ill. App. 476, 90 N.E.2d 256.

The evidence of survivorship offered by the estate of Mary Ellen Lowrance consisted solely of testimony by a police officer who was sent to the Lowrance home to investigate the deaths of the couple. His testimony consisted of observations he made of the couple's bodies at their home at about 8 p.m. the day of their deaths and statements made to him some six hours later at the police station by the couple's daughter, Paula Lowrance, regarding the shooting of her parents. When questioned during direct examination about his observations of the couple, the officer testified that upon entering their bedroom, he saw them lying on the bed, Mr. Lowrance slightly on his left side and Mrs. Lowrance on her back. Their eyes were closed. The only differences observed about the two bodies by the witness were that Mrs. Lowrance had blood on her face

and the front of her body in contrast to Mr. Lowrance who showed no bleeding and that "a gurgling sound or escape of air" came from Mrs. Lowrance's body three times. On cross-examination the officer testified that while in the presence of the Lowrance bodies, he never saw either body move or breathe. He stated that he did not take the pulse of either, that the muscles of both seemed relaxed and that he noticed nothing unusual about the skin color of either body. When cross-examined about the passage of air he heard come from Mrs. Lowrance's body, the officer testified as follows:

> "Q: Now then you testified that you heard what sounded like the passage of air coming out from the body of Mrs. Lowrance?
> A: Yes.
> Q: But that wasn't accompanied by any motion at all?
> A: No, it was not.
> Q: Did that sound like a gurgling sound, would you describe it that way?
> A: A gurgle sound like a passage of air, like a body releasing air.
> Q: Perhaps from the collapsing of lungs?
> A: Possibly."

Although the officer was never asked his opinion as to who had survived, he did state that never in his 15 years of police experience had he had occasion to determine whether, in his own judgment, a person was dead or alive.

The witness' testimony about his conversation with Paula Lowrance, the daughter and apparent murderess of the couple, was objected to as hearsay, and petitioner raises that issue in this appeal. Because of our holding, we shall not address the hearsay issue. Direct examination about Paula Lowrance's statements to the witness proceeded as follows:

> "A: It was on December 7th at approximately 2:15 a.m. when we talked to her, and she admitted that she had shot her father and left the room and came back and shot her mother.
> Q: Do you know what period of time was before the time she shot her father and went out and came back and shot her mother?
> A: No, I don't.
> Q: Did she say she had done anything after she went out after shooting her father?
> A: She came back to the room and shook her father and then went around to the south side of the bed and shot her mother."

Paula Lowrance's statements disclose only the order in which she shot her parents. The fact that Mr. Lowrance was shot first does not warrant the conclusion that he also died first.

■■ From our examination of the record, we find the facts are not in dispute, and the rules that the findings and conclusions of the trier of fact on question of fact are prima facie true and correct and cannot be set

aside on appeal unless they are against the manifest weight of, or without substantial foundation in the evidence, do not apply in this case. *Fransen Construction Co. v. Industrial Com.*, 384 Ill. 616, 52 N.E.2d 241; *Union Starch & Refining Co. v. Department of Labor*, 8 Ill. App. 3d 406, 289 N.E.2d 692 (5th Dist. 1970).

Even assuming, arguendo, that these rules are applicable, we hold that this evidence is insufficient to establish that Mary Ellen Lowrance survived her husband. In so holding, we have compared the evidence in this record with that in *In re Estate of Adams*, 348 Ill. App. 115, 108 N.E.2d 32, and in *Prudential Insurance Co. of America v. Spain*, 339 Ill. App. 476, 90 N.E.2d 256. In *Adams*, Mr. and Mrs. Adams died the same day as a result of a fire in their home. Mrs. Adams' body was removed from the house 20 to 30 minutes before her husband's and was immediately examined by a physician who testified she was dead at that time. The first person to reach Mr. Adams testified that there was color in Mr. Adams' face, that a noise came from Mr. Adams' mouth and that, in his opinion, Mr. Adams was at that time alive. On cross-examination he stated he did not feel Mr. Adams for a heart beat or pulse and observed no breathing from the body. A second witness who observed Mr. Adams at the same time testified that he was of the opinion Mr. Adams was alive when brought out of the house. Both parties called pathologists to answer hypothetical questions regarding priority of death, and their answers were contradictory. The trial court's finding of insufficient evidence that death occurred otherwise than simultaneously was affirmed.

In *Spain*, a husband and wife were killed when their car ran into a train. A switchman from the train testified that he checked but could find no pulse in the husband and that he did not hear him breathe or make any kind of noise. He stated he heard the wife groan and had the opinion the husband was dead and the wife was alive. A second switchman testified he saw the wife move her head to the left, then back again to the right, then back again. He also felt her pulse beat twice. The trial court's finding that Mrs. Spain survived her husband was affirmed.

We believe that neither *Spain* nor *Adams* is controlling, and they are clearly distinguishable. In *Spain*, the survivor showed three observable and distinct indications of life—groaning, head movement and pulse. The other body was examined and showed no signs of life. In *Adams*, Mrs. Adams was examined by a physician who said she showed no signs of life, whereas the body of Mr. Adams, removed some 20 minutes later, emitted a sound. When the question of survivorship must be determined from the testimony of one lay witness as here, we believe the minimum evidence required to sustain the burden of sufficient evidence is a positive sign of life in one body and the absence of any such sign in the other after an examination of the other is made. In the instant case, neither Mr. nor Mrs.

Lowrance was examined for pulse or heartbeat, and there is no evidence that the sound coming from Mrs. Lowrance's body was in fact a sign of life.

■■ We believe the trial court in this case based its finding on two facts in the record—that Paul Lowrance was shot first and that air passed from Mrs. Lowrance's body. In the absence of any evidence regarding the location, nature and severity of the victims' gunshot wounds; regarding an actual examination of the bodies; regarding a witness' opinion as to priority of death; or regarding the physiological significance of air passing from the human body, we find these two facts insufficient to show that Mrs. Lowrance survived. We believe the purpose and intent of the simultaneous death act was to provide for the equitable distribution of intestate decedents' estates in circumstances present in the record in this case.

Accordingly, we reverse and remand with directions to enter an order that Paul F. Lowrance and Mary Ellen Lowrance died under such circumstances that there is no sufficient evidence that they died otherwise than simultaneously.

Reversed and remanded.

JONES and KARNS, JJ., concur.