77 Ill.2d 147 (1979)
395 N.E.2d 579
In re ESTATE OF BERTHA MORAN (Waynette Schneberger, Adm'r, Appellant,
v.
Owen A. Moran, Adm'r, Appellee).
No. 51703.
Supreme Court of Illinois.
Opinion filed October 2, 1979.
*148 Adamowski, Newey & Adamowski, of Chicago (Frank C. Stanley, of counsel), for appellant.
John C. Williams, Arlene C. Erlebacher and Kathryn E. Korn, of Sidley & Austin, of Chicago, for appellee.
Judgment affirmed.
MR. JUSTICE MORAN delivered the opinion of the court:
The issue in this case is whether there was "sufficient evidence" under the Illinois version (Ill. Rev. Stat. 1975, ch. 3, pars. 41a through 41g) of the Uniform Simultaneous Death Act to show that one of two persons who died from carbon monoxide poisoning survived the other.
On November 12, 1975, Bertha J. Moran and her son, Ronald W. Moran, died as the result of carbon monoxide poisoning while sitting in a parked car which was left running in an enclosed garage. On December 18, 1975, after proceedings to probate Bertha's estate, the circuit court of Cook County entered an order declaring that Bertha's only surviving heirs at law were Jane M. Traeger, *149 her daughter, and Owen A. Moran and Roger F. Moran, her other sons. Following the resignation of the executor of Bertha's estate, the court appointed Owen A. Moran administrator de bonis non with the will annexed. Waynette Schneberger (petitioner), administrator of Ronald's estate, thereafter petitioned the court to amend the table of heirship to reflect that Ronald survived Bertha. On July 11, 1977, following a bench trial, the court granted the petition. On appeal by the respondents, Owen A. Moran (as both heir and administrator), Roger F. Moran, and Jane M. Traeger, the appellate court reversed and remanded with directions to modify the order to conform with the original table of heirship. (67 Ill. App.3d 576.) We granted the petitioner leave to appeal.
The Illinois version of the Uniform Simultaneous Death Act provides in pertinent part as follows:
"Where the title to property or the devolution thereof depends upon priority of death and there is no sufficient evidence that the persons have died otherwise than simultaneously, the property of each person shall be disposed of as if he had survived, except as provided otherwise in this Article." (Ill. Rev. Stat. 1975, ch. 3, par. 41a.)
We note initially that none of the exceptions to which the foregoing provision refers is applicable here; therefore, the operative portion of the provision controls the resolution of this case. What constitutes "sufficient evidence" under the foregoing provision has never been addressed by this court. Other jurisdictions, however, as well as the Illinois appellate court, have passed upon this phrase, and are in substantial conformity as to its meaning and effect. In view of the directive that "[t]his Article shall be so construed and interpreted as to effectuate its general purpose to make uniform the law in those states which enact similar statutes" (Ill. Rev. Stat. 1975, ch. 3, par. 41g), particular weight is to be given to the decisions of *150 these courts. The decisions provide several well-established rules to be followed in deciding the issue at hand.
The Act is not a rule of evidence, as such, but one of substantive law that governs the devolution of property under certain circumstances. (Brundige v. Alexander (Tenn. 1976), 547 S.W.2d 232, 234; In re Cruson's Estate (1950), 189 Or. 537, 554, 221 P.2d 892, 899.) When the evidence fails to disclose that one of the persons survived the other and the operative portion of the Act is applicable, the Act controls the manner in which the property of both persons is to be disposed. The burden is on the party whose claim is dependent upon survivorship to prove the order of death by a preponderance of the evidence, the same degree of proof as is required in other civil cases. Smith v. Smith (1972), 361 Mass. 733, 736, 282 N.E.2d 412, 414; In re Estate of Schmidt (1968), 261 Cal. App.2d 262, 270, 67 Cal. Rptr. 847, 852; United Trust Co. v. Pyke (1967), 199 Kan. 1, 8, 427 P.2d 67, 73; In re Cruson's Estate (1950), 189 Or. 537, 562, 221 P.2d 892, 902; Sauers v. Stolz (1950), 121 Colo. 456, 458, 218 P.2d 741, 742; Prudential Insurance Co. v. Spain (1950), 339 Ill. App. 476, 482, cited with approval in In re Estate of Adams (1952), 348 Ill. App. 115, 121, and In re Estate of Lowrance (1978), 66 Ill. App.3d 159, 160.
Direct or circumstantial evidence may properly be used to prove survivorship. (Smith v. Smith (1972), 361 Mass. 733, 736, 282 N.E.2d 412, 414; United Trust Co. v. Pyke (1967), 199 Kan. 1, 8, 427 P.2d 67, 72-73; In re Estate of Schmidt (1968), 261 Cal. App. 262, 67 Cal. Rptr. 847, 852; see Sahn v. Muscarello (1948), 336 Ill. App. 188, 194-95.) At common law, however, there is no presumption of survivorship based upon age, sex, or condition of health. (Modern Woodmen of America v. Parido (1929), 335 Ill. 239, 243; Middeke v. Balder (1902), 198 Ill. 590, 594; Brundige v. Alexander (Tenn. 1976), 547 S.W.2d 232, 234; 1 Jones, Evidence sec. 3.89, *151 at 315-16 (6th ed. 1972).) Because the Act did not change the rules of evidence (Prudential Insurance Co. v. Spain (1950), 339 Ill. App. 476, 482), the same rule  no presumption of survivorship  holds true under the Act. See Smith v. Smith (1972), 361 Mass. 733, 736, 282 N.E.2d 412, 414; In re Bucci's Will (Sur. Ct. 1968), 57 Misc.2d 1001, 293 N.Y.S.2d 994, 996; In re Di Bella's Estate (Sur. Ct. 1953), 125 N.Y.S.2d 755, 757.
The quality of evidence needed to prove priority of death, or survivorship, may be gleaned from a review of the evidence in several cases in which one of the deceased persons was found to have survived the other. Direct evidence was presented to satisfactorily establish survivorship in In re Estate of Schmidt (1968), 261 Cal. App.2d 262, 67 Cal. Rptr. 847 (survivor was breathing, gasping and moaning and had extensive bleeding from the ears); In re Estates of Davenport (1958), 79 Idaho 548, 323 P.2d 611 (survivor was breathing and bleeding from the nose); Sauers v. Stolz (1950), 121 Colo. 456, 218 P.2d 741 (survivor had slight heart beat and was spurting blood from his head); and Prudential Insurance Co. v. Spain (1950), 339 Ill. App. 476 (survivor groaned, moved her head, and had a slight pulse). Cases in which circumstantial evidence was held sufficient to establish survivorship include In re Bucci's Will (Surr. 1968), 57 Misc.2d 1001, 293 N.Y.S.2d 994 (following airplane crash, survivor's brain was intact and her blood contained carbon monoxide which could only have entered by inhaling such gas generated by a gasoline fire which occurred after the crash, while other deceased sustained massive head injuries and had no carbon monoxide in his blood); and United Trust Co. v. Pyke (1967), 199 Kan. 1, 427 P.2d 67 (survivor shot another in the head five times, with any one of the five shots capable of causing death almost instantaneously, before shooting himself once).
The evidence of record in the case at bar may be *152 summarized as follows. Police Sergeant Metsch arrived first at the scene. Upon approaching the closed garage, he heard what sounded like an engine running and smelled an exhaust odor. He tried to open the garage but found it locked. The fire department emergency medical technicians team, headed by Assistant Fire Chief Bednarz, arrived shortly thereafter. Bednarz also heard an engine running and saw fumes or smoke coming from beneath the overhead garage door. One of the team members crawled into the garage through the window and, although the fumes inside were extremely heavy, managed to open the garage. Bertha and Ronald were found close together in the front seat of the car in slumped positions, Bertha on the passenger's side and Ronald on the driver's side with the seat belt fastened about him. The windows of the car were partially open. Bednarz examined Ronald while other team members examined Bertha; no signs of life were found in either. Upon an examination a short time later, Sergeant Metsch found that the exposed skin of both bodies had a reddish tinge. The record does not reveal that autopsies were performed.
Dr. Henry Swiontek, the Morans' family physician, testified as to the decedents' recent medical histories. He stated that Ronald had been a patient of his from 1972 through 1974, during which time Ronald periodically suffered from respiratory infections which lasted for about a week each time. A chest X ray taken in 1972 showed no pathology. Dr. Swiontek treated Bertha as a patient from 1972 until her death. Bertha suffered a small stroke in November of 1972, but responded favorably to treatment. Her heart, blood pressure and pulse were found to be normal, both a month after the stroke and thereafter, and she suffered no residual neurological effects. Bertha's chest X ray, taken on September 16, 1973, revealed some calcification of the aorta, indicating a sclerosis or hardening of the arteries. Her X ray was taken when she was *153 hospitalized for hip surgery which left her confined to a wheel chair. In November 1973, Bertha had a mild type of anemia, for which Dr. Swiontek treated her through 1974. Upon examining her the day before she died, Dr. Swiontek found Bertha's heart, blood pressure and cardiac auscultations normal.
The petitioner called two pathologists, Dr. Robert Stein and Dr. Isadore Pilot, as expert witnesses. Dr. Stein opined that, on the basis of the ages of the two at the time of death, Ronald, 41 years of age, survived Bertha, who was 79. He stated further, "I am going strictly on experience." Dr. Pilot formed the same opinion based upon Bertha's advanced age and disabilities.
Dr. Charles Petty, a pathologist called as an expert by the respondents, concluded that, absent other factors, it would be impossible to determine which of the two individuals died first.
It is clear that the evidence introduced was all of the type going to the relative ages and conditions of health of the decedents. As such, it fits into the category of evidence which, under the rules set forth earlier, is deemed too speculative in nature to serve as a basis for a presumption of survivorship. The evidence was therefore wholly insufficient to prove that Ronald survived Bertha.
Accordingly, there being "no sufficient evidence that the persons died other than simultaneously," the judgment of the appellate court is affirmed.
Judgment affirmed.