FOURTH DIVISION

February 7, 2002

No. 1-00-4157

In re
 ESTATE OF SAM G. PARISI )        Appeal from

)     the Circuit Court

(Cherylee Trenkamp, Adm'r of the Estate )      of Cook County.

of Sam G. Parisi, Deceased, )

)

Petitioner-Appellant, )

)       No. 99-P-864

v. )

)

Thomas C. Eckel, Adm'r of the Estate of )

Carol Ann Parisi, Deceased, )         Honorable

)      Jeffrey Malak,

Respondent-Appellee). )     Judge Presiding.

JUSTICE THEIS delivered the opinion of the court:

Cherylee Trenkamp, administrator of the estate of Sam G. Parisi, deceased, appeals from the circuit court's denial of her petition to vacate an order declaring heirship.  On appeal, Cherylee contends that the trial court erred in denying her petition where there was insufficient evidence to find that the deaths of Sam Parisi and Carol Parisi were not simultaneous under the "Simultaneous Deaths" section of the Probate Act of 1975 (755 ILCS 5/3-1 
et seq.
 (West 1998)) (the Act), and where the court had previously determined that section 3-1 of the Act applied to the estate of Carol Ann Parisi.  Cherylee also argues that the court erred in denying her petition for rehearing and excluding her expert's affidavit.  For the reasons set forth below, we reverse and remand.

On January 20, 1999, Sam Parisi and his daughter, Carol Parisi, were found dead in their home.  Both bodies were in various stages of decomposition and the police determined that they had been dead for over three weeks.  Sam was discovered on the floor in a hallway near a heating vent wearing pajamas and covered with a blanket.  The medical examiner later determined that Sam's death was due to natural causes, namely, coronary atherosclerosis.  Carol was found lying on her bed under a sheet and was wearing a sweater and pants.  Carol's death was ruled accidental from salicylate intoxication.  The death certificates reflect times of death as 3:26 p.m. for Sam and 3:28 p.m. for Carol, which were the times their bodies were discovered. 

Sam left a will that bequeathed his entire estate to his wife, Katherine, and, if she predeceased him, to Carol.  Katherine died in 1993, and Sam had no other children.  Carol died intestate, never married and had no children.  Cherylee, as Sam's niece and Carol's first cousin, was appointed administrator of both estates in February 1999.  Carol's and Sam's estates progressed simultaneously, but separately, through the court system with the same judge.  For clarity's sake, we will review the procedural history of each estate separately.

In Carol's estate, Cherylee identified that Carol had four other living heirs:  Cherylee's brother, Randall Sanfilip, and three maternal first cousins, Thomas C. Eckel, Edward M. Eckel and Anna June Eckel Reimbold.  In opening Carol's estate, Cherylee filed an affidavit of heirship on February 8, 1999, and an amended affidavit on July 19, 1999, stating that both Katherine and Sam predeceased Carol.  The court entered an amended order declaring heirship based on Cherylee's July 19, 1999, affidavit and listed Carol's heirs as her five cousins and other unknown heirs.  On December 14, 1999, the court entered an order that the administrator was researching the sequence of Carol's and Sam's deaths and set the matter for a hearing on February 14, 2000.  On February 14, the court ordered that, unless evidence was submitted to the contrary before March 7, 2000, the court would apply section 3-1 of the Act and find that Carol survived Sam as to her solely owned property, Sam survived Carol as to his solely owned property and section 3-1 of the Act applied to all jointly owned property.

Thereafter, Anna June filed a motion to declare the sequence of deaths, arguing that there was sufficient evidence to prove that Sam died before Carol.  She attached the affidavits of heirship sworn to by Cherylee which stated that Sam predeceased Carol.  Further, Anna June included the reports of the medical examiner, Dr. Chira, which determined both causes of death.  The reports also stated that Sam's body was in a moderately advanced stage of decomposition and had no stomach contents while Carol was found in an early state of decomposition with fluid in her stomach.  However, the autopsy reports did not indicate the actual date and time of their deaths or the order in which they died.  An investigator from the Cook County sheriff's police department attended the autopsies and reiterated some of the medical examiner's initial findings as to stages of decomposition and stomach contents in a portion of his report.  Further, the sheriff's report stated that it was Dr. Chira's belief that Carol died at a later date than Sam.  Anna June also attached part of the sheriff's evidence report which described the decomposed condition of the bodies.  In response, Cherylee submitted the unsworn opinions of three experts who stated that the evidence was insufficient to establish the order of death.  Neither party presented the court with any sworn affidavits, depositions or testimony concerning order of death.

Cherylee also filed a petition to vacate orders declaring heirship, explaining that her initial affidavits of heirship were based on a telephone conversation between her attorney and Dr. Chira where Dr. Chira stated his opinion that Sam died before Carol.  However, Cherylee later learned that the medical examiner's reports failed to establish the order of death.  Because Cherylee now had no evidence to substantiate that Sam predeceased Carol, she requested that the court vacate the order of heirship and determine the sequence of Carol's and Sam's deaths.  

After a hearing on this issue on March 27, 2000, the court entered an order that "Carol is presumed to have survived Sam as to her estate as per statute."  Thus, the court must have made the factual determination that the evidence was insufficient to establish the order of death and applied section 3-1 of the Act to Carol's estate.  The court also held that "[a]ll pleadings filed concerning order of death may be used as pleadings in the Estate of Sam Parisi" and vacated the order of heirship of July 19, 1999.  A second amended order declaring heirship, entered on May 17, 2000, reflected the court's finding that section 3-1 of the Act applied and listed Carol's five cousins as her only heirs.  On August 1, 2000, the court ordered that the order of heirship previously entered stands.

In Sam's estate, Cherylee filed an affidavit of heirship on February 8, 1999, and the court then entered an order declaring heirship based on this affidavit and listed Carol as Sam's only heir.  Cherylee next filed a verified amended petition for probate of a will on July 19, 1999, which gave the estate of Carol as Sam's heir.  Following the entry of the order declaring heirship in Carol's estate, Cherylee filed a petition to vacate the order declaring heirship and the court determination of order of death in Sam's estate on May 17, 2000.  That petition incorporated by reference, pursuant to court order, all documents filed in Carol's estate regarding order of death.  After Anna June filed a response, the court denied Cherylee's petition on August 1, 2000.  Cherylee filed a petition for rehearing, attaching a new affidavit from a medical expert stating that the evidence was insufficient to establish order of death.  Thomas filed an appearance in Sam's estate and both he and Anna June filed responses to Cherylee's petition for rehearing.  On November 14, 2000, the court denied Cherylee leave to file the affidavit and also denied her petition for rehearing.  Cherylee then filed this timely appeal.

Cherylee first contends that in Sam's estate the trial court erred in denying her petition to vacate the order declaring heirship entered on February 8, 1999, because there was insufficient evidence to find that the deaths of Sam and Carol were not simultaneous under section 3-1 of the Act.  The original order declaring heirship relied upon Cherylee's affidavit which stated that Sam predeceased Carol and, therefore, listed Carol as Sam's sole heir.  If Sam's and Carol's deaths were simultaneous as Cherylee contends, section 3-1 of the Act would apply.  Under section 3-1, as discussed more fully below, Carol could not inherit from her father and Sam's only heirs would be his relatives, Cherylee and Randall.  Thus, Cherylee argues, the February 8, 1999, order declaring heirship listing Carol as Sam's heir was incorrect and must be vacated in order to comply with section 3-1 of the Act.  Thomas responds that this court cannot address this issue because Cherylee failed to include a transcript of the hearing in the record on appeal.  Additionally, he argues that the trial court's decision was proper and was not against the manifest weight of the evidence.  

Even without a transcript of the hearing, we can deduce what evidence was before the court at the August 1, 2000, ruling and address Cherylee's argument.  In her petition to vacate filed on May 17, 2000, Cherylee incorporated by reference all documents regarding order of death entered in the estate of Carol Ann Parisi, pursuant to the court order dated March 27, 2000.  Those documents were submitted to and reviewed by the court at the March 27, 2000, hearing in Carol's estate and included the affidavits of heirship sworn to by Cherylee, the autopsy reports, portions of the sheriff's report and three expert opinions.  Further, both parties agree that no other evidence or testimony was received at the August 1 hearing.  Therefore, we will review the trial court's decision to deny Cherylee's petition to vacate the order declaring heirship based on this evidence.

When reviewing the trial court's ruling, we determined whether the court's judgment was against the manifest weight of the evidence.  
Judgment Services Corp. v. Sullivan
, 321 Ill. App. 3d 151, 154, 746 N.E.2d 827, 830 (2001); 
Janus v. Tarasewicz
, 135 Ill. App. 3d 936, 942, 482 N.E.2d 418, 423 (1985).  A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence.  
Judgment Services Corp.
, 321 Ill. App. 3d at 154, 746 N.E.2d at 830-31.  

Section 3-1 of the Act provides in relevant part: 

"If the title to property or its devolution depends upon priority of death and there is no sufficient evidence that the persons have died otherwise than simultaneously and there is no other provision in the will *** or other governing instrument for distribution of the property different from the provisions of this Section:

(a) The property of each person shall be disposed of as if he had survived."  755 ILCS 5/3-1(a) (West 1998).  

This section of the Act is based on the Uniform Simultaneous Death Act (8B U.L.A. 147 (2001)) and shall be construed and interpreted to effectuate its general purpose to make the law uniform with those states enacting similar statutes.  755 ILCS 5/3-2 (West 1998).  Thus, cases from other states adopting the Uniform Simultaneous Death Act are persuasive.  
In re Estate of Moran
, 77 Ill. 2d 147, 149-50, 395 N.E.2d 579, 581 (1979).  

The purpose of section 3-1 of the Act is to provide substantive law to govern the devolution of property under certain circumstances.  
In re Estate of Moran
, 77 Ill. 2d at 150, 395 N.E.2d at 581.  The party whose claim depends upon survivorship has the burden to prove the order of death by a preponderance of the evidence.  
In re Estate of Moran
, 77 Ill. 2d at 150, 395 N.E.2d at 581.  When there is no sufficient evidence that two individuals died other than simultaneously, each individual's property is distributed as if he or she had survived the other individual.  Each individual's property passes to that individual's relatives and not to the other person's relatives.  Uniform Simultaneous Death Act, Prefatory Note, 8B U.L.A. 143 (2001); J. Brooks & S. Weissbluth, 
Heirship, Adoption, and Paternity
, in Estate, Trust, & Guardianship Litigation §10.12 (Ill. Inst. for Cont. Legal Educ. 2001).  Thus, neither decedent inherits from the other.  P. Carroll, 
Uniform Laws in Arkansas
, 52 Ark. L. Rev. 313, 338-40 
(1999).  See, 
e.g.
, 
Estate of Schweizer v. Estate of Schweizer
, 7 Kan. App. 2d 128, 129, 638 P.2d 378, 379 (1981); 
In re Gerasimoff's Estate
, 96 N.Y.S.2d 142, 143 (1950).  Section 3-1 of the Act creates similar rules for the distribution of property in other situations, including beneficiary designations, joint property and insurance proceeds.  755 ILCS 5/3-1(b), (c), (d) (West 1998); M. Conway, 
Administration of Decedents' Estates
, in Estate, Trust, & Guardianship Litigation §13.30 (Ill. Inst. for Cont. Legal Educ. 2001).  

Section 3-1 of the Act applies only to situations where there is no sufficient evidence that one of the decedents outlived the other. 
 Direct or circumstantial evidence may be used to prove survivorship, but there is no presumption of survivorship based on age, sex, or condition of health.  
In re Estate of Moran
, 77 Ill. 2d at 150, 395 N.E.2d at 581.  In determining the quality of evidence necessary to constitute "sufficient evidence" of survivorship, 
our supreme court in 
In re Estate of Moran
 reviewed the evidence in several cases where one decedent was found to have survived the other.  
In re Estate of Moran
, 77 Ill. 2d at 150-51, 395 N.E.2d at 581.  Direct evidence was presented to satisfactorily establish survivorship in 
In re Estate of Schmidt
, 261 Cal. App. 2d 262, 67 Cal. Rptr. 847 (1968) (survivor was breathing, gasping, and moaning and had extensive bleeding from ears); 
In re Estates of Davenport
, 79 Idaho 548, 323 P.2d 611 (1958) (survivor was breathing and bleeding from nose);
 
Janus
, 135 Ill. App. 3d at 943-44, 482 N.E.2d at 424 (survivor had pulse and other vital signs);
 
Prudential Insurance Co. of America v. Spain
, 339 Ill. App. 476, 90 N.E.2d 256 (1950) (survivor groaned, moved her head and had a slight pulse); and 
In re Estate of Villwock
, 142 Wis. 2d 144, 418 N.W.2d 1 (1987) (survivor alive and conscious after other person's heart and lungs failed). 

Cases in which circumstantial evidence sufficiently established survivorship include 
United Trust Co. v. Pyke
, 199 Kan. 1, 427 P.2d 67 (1967) (expert testimony that survivor shot another in head five times, with any one of five shots capable of causing death almost instantaneously, before shooting himself once), 
overruled on other grounds by
 
Harper v. Prudential Insurance Co. of America
, 233 Kan. 358, 662 P.2d 1264 (1983); 
In re Estate of Whitaker
, 120 Misc. 2d 1021, 466 N.Y.S.2d 947 (1983) (pathologist's affidavit stated his opinion based on postmortem examinations as to which person survived); and 
In re Bucci's Will
, 57 Misc. 2d 1001, 293 N.Y.S.2d 994 (1968) (qualified physicians interpreting autopsy reports testified that following airplane crash, survivor's brain was intact and her blood contained carbon monoxide, which could only have entered by inhaling gas generated by gasoline fire that occurred after crash, while other deceased sustained massive head injuries and had no carbon monoxide in his blood)
.

However, the evidence in the following cases proved insufficient to establish the order of death: 
In re Estate of Lowrance
, 66 Ill. App. 3d 159, 383 N.E.2d 703 (1978) (police officer's testimony that he heard a gurgling sound from wife and no sounds from husband insufficient); 
In re Estate of Adams
, 348 Ill. App. 115, 108 N.E.2d 32 (1952) (witness' testimony that a noise came from husband and no sounds from wife was insufficient where there were contradictory expert opinions as to survivor); 
Smith v. Smith
, 361 Mass. 733, 282 N.E.2d 412 (1972) (expert's opinion that wife died first due to her poor health was insufficient where medical examiner testified he could not determine order of death); 
In re Estate of Viviano
, 624 S.W.2d 130 (Mo. App. 1981) (emergency personnel testified that when they arrived at the scene of the accident both husband and wife were dead, and court rejected pathologist's opinion that wife died first); and 
In re Estate of Campbell
, 56 Or. App. 222, 641 P.2d 610 (1982) (circumstantial evidence aided by an expert opinion based on health of decedents, autopsy reports, and location of bodies that husband survived insufficient where pathologists could not determine order of death)
.

In 
In re Estate of Moran
, a mother and son were found dead as a result of carbon monoxide poisoning.  Upon examining the bodies at the scene, rescue workers detected no signs of life in either person.  The Morans' family physician testified that the son suffered from periodic respiratory infections and the mother had some minor health problems and was confined to a wheelchair.  However, he examined the mother the day before she died and found that her heart, blood pressure and pulse were normal.  Two pathologists stated that, based mainly on the fact that the mother was 79 years old and the son was 41 years old, the son survived the mother.  Another pathologist testified that it was impossible to determine the order of death.  The court then held that all of the evidence introduced related to the relative ages and health conditions of decedents, which was "too speculative in nature to serve as a basis for a presumption of survivorship" and applied section 3-1 of the Act.  
In re Estate of Moran
, 77 Ill. 2d at 153, 395 N.E.2d at 582.

In the present case, the evidence as to order of death included previous affidavits of heirship sworn to by Cherylee stating that Sam predeceased Carol.  Additionally, the parties submitted the sheriff's report and autopsy reports which stated that Carol's body showed signs of early postmortem decomposition while Sam's body was in a moderately advanced stage of decomposition.  The reports further noted that Carol's stomach contained some fluid, but Sam's stomach was empty.  The autopsies determined the causes of both deaths, but were silent as to the actual times and order of death.  The sheriff's report indicated that Dr. Chira believed that Carol survived Sam.  Lastly, Cherylee submitted three unsworn expert opinions that, based on the evidence available, the order of death could not be determined.  Two of the experts also stated that rates of decomposition vary depending upon several factors and, thus, it does not necessarily follow that a person in an advanced stage of decomposition died before someone in an earlier stage of decomposition.  

Reviewing this evidence in light of the above-cited case law, we find that the evidence in this case was wholly insufficient to prove that Sam or Carol survived the other, bringing this case squarely within the confines of section 3-1 of the Act.  Here, there was no direct evidence that either Sam or Carol survived the other.  Further, the parties presented no circumstantial evidence to establish survivorship.  The cases cited above, both those that found circumstantial evidence sufficient and those that did not, relied on expert testimony or affidavits as to the order of death.  In this case, we have no expert opinion that one person predeceased the other.  Although a comment in the sheriff's report suggested that Dr. Chira believed that Carol survived Sam, Dr. Chira himself never expressed this belief in his autopsy reports and never testified to this issue at the hearing or in a sworn affidavit.  Thomas and Anna June never presented an expert witness to explain how the relative stages of decomposition and other circumstances demonstrated whether Sam or Carol died first.  In fact, the only expert opinions submitted, although not in affidavit form, stated that the order of death could not be determined.  Moreover, the court evaluated all of this evidence in Carol's estate when it applied the Act and vacated the previous order of heirship.  

Thomas relies on the affidavits of heirship sworn to by Cherylee which state that Sam predeceased Carol and the orders of heirship entered upon these affidavits as sufficient proof that Carol survived Sam.  However, orders declaring heirship are only 
prima facie
 evidence of heirship and this presumption may be overcome in a subsequent proceeding such as this one.  755 ILCS 5/5-3(c) (West 1998); 
In re Estate of Severson
, 107 Ill. App. 3d 634, 636, 437 N.E.2d 430, 432 (1982); 
In re Estate of Conrad
, 117 Ill. App. 2d 29, 32, 254 N.E.2d 123, 125 (1969).  The trial court implicitly rejected similar orders of heirship in Carol's estate when it determined that section 3-1 of the Act applied and vacated the previous order declaring heirship.  Cherylee sought the same relief in Sam's estate based on the same evidence.  Thus, we find that the trial court erred in denying Cherylee's petition to vacate the order of heirship in Sam's estate and its decision not to apply section 3-1 of the Act was against the manifest weight of the evidence.

Further, we agree with Cherylee that the trial court created inconsistent and irreconcilable conclusions in Carol's and Sam's estates.  While it applied section 3-1 of the Act to Carol's estate, vacated the previously entered order of heirship, and entered an amended order of heirship clarifying Carol's heirs under section 3-1 of the Act, the same court refused to apply section 3-1 of the Act or vacate the heirship order in Sam's estate.  By its nature, section 3-1 applies to the estates of at least two decedents and provides that "[t]he property of 
each
 
person
 shall be disposed of as if he had survived."  (Emphasis added.)  755 ILCS 5/3-1(a) (West 1998).  Moreover, our supreme court dictated that "[w]hen the evidence fails to disclose that one of the persons survived the other and the operative portion of the Act is applicable, the Act controls the manner in which the property of 
both
 
persons
 is to be disposed."  (Emphasis added.)  
In re Estate of Moran
, 77 Ill. 2d at 150, 395 N.E.2d at 581.  Thus, section 3-1 of the Act must be applied to the estate of all individuals determined to have died simultaneously.  Here, once the court determined that Carol's estate would be administered under section 3-1 of the Act, it had to make the same conclusion in Sam's estate. 

Therefore, we hold that section 3-1 of the Act applies to Sam's estate and reverse and remand this matter for further proceedings consistent with this opinion.  Thus, we need not address Cherylee's additional argument that the court erred in denying her petition for rehearing and denying her leave to file an expert's affidavit.

Reversed and remanded.  

HOFFMAN, P.J., and HARTMAN, J., concur.