No. 99,908

JOHN POLSON, Representative of the heirs at law of TIMOTHY POLSON, Deceased, and PAULINE FALLIS, Representative of the heirs at law of MICHELLE D. POLSON, Deceased, *Appellants*, v. FARMERS INSURANCE CO., INC., *Appellee*.

(200 P.3d 1266)

Opinion filed January 30, 2009.

*Dennis J. Cassidy*, of Dezube Miller, L.L.C., of Overland Park, argued the cause, and *Douglas K. Dezube*, of the same firm, was with him on the briefs for appellants.

*Jeffrey S. Southard*, of Abbott, Davidson & Southard, of Kansas City, Missouri, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: This case involves two claims for survivors' benefits against Farmers Insurance Co., Inc., following the tragic deaths of Timothy and Michelle Polson, who were found dead at the scene of a Kansas automobile accident. On appeal we consider whether Farmers was obligated to pay survivors' benefits under K.S.A. 40-3103(y) to Timothy, Michelle, or their estates. This determination is dependent upon whether one or both of them qualify as a "survivor" as that word is defined under K.S.A. 40-3103(x) of the Kansas Automobile Injury Reparations Act (KAIRA), K.S.A 40-3101 *et seq.*, when considered in conjunction with K.S.A. 58-709 of the Kansas Uniform Simultaneous Death Act (KUSDA), K.S.A. 58-708 *et seq.*

*Facts and Procedural Background*

According to the uncontroverted facts, Timothy and Michelle, who were married and did not have children, were insured at the time of their deaths by an auto insurance policy issued by Farmers. The policy provided personal injury protection (PIP) benefits as

required by the KAIRA, K.S.A. 40-3101 *et seq.*, which included coverage for disability, funeral expenses, medical and rehabilitation expenses, as well as substitution and survivors' benefits.

John Polson (Polson), father of Timothy and representative of Timothy's heirs-at-law, and Pauline Fallis (Fallis), mother of Michelle and representative of Michelle's heirs-at-law, made separate written demands upon Farmers for survivors' benefits in the identical amount of $10,800. Farmers denied the demands of both Polson and Fallis, finding that the definition of "survivor" was not met in either claim.

After filing separate lawsuits against Farmers, the two cases were consolidated. Subsequently, Polson and Fallis filed a motion for summary judgment, arguing they were both entitled as a matter of law to receive survivors' benefits arising out of the deaths of Timothy and Michelle, plus pre- and postjudgment interest. They argued that under the facts of this case, K.S.A. 58-709 of the KUSDA permits recovery in that each decedent is presumed to have survived the other by less than 120 hours. Polson and Fallis contended, therefore, that each decedent's assets, including his or her right to survivors' benefits, should pass to his or her heirs. As a result, Polson and Fallis also argued they were each entitled to attorney fees under K.S.A. 40-256 due to Farmers' refusal to pay their respective survivors' benefits claims without just cause or excuse.

Farmers submitted a cross-motion for summary judgment. Although there is some dispute as to when the cross-motion was filed and served, it is clear Polson and Fallis received and replied to the cross-motion, the district court considered the motion, and the district court ruled upon it in its journal entry of judgment.

After considering the uncontroverted facts and hearing the arguments of counsel, the district court was not convinced by Polson's and Fallis' contentions. The court found Timothy and Michelle were not survivors of each other under the provisions of the KAIRA. In addition, the district court determined the provisions of the KAIRA provide specific statutory guidance for the award of survivors' benefits and, therefore, the KAIRA controls in the event of a conflict with the more general provisions of the

KUSDA. Consequently, the court concluded that Polson and Fallis were not entitled to such benefits.

Polson and Fallis now appeal, arguing that the district court erred in granting summary judgment in favor of Farmers and maintaining that they were entitled to summary judgment as a matter of law. The appeal was transferred to this court on its own motion pursuant to K.S.A. 20-3018(c).

## Analysis

A de novo standard applies to our appellate review of the district court's decision to grant of summary judgment because that decision was based upon uncontroverted facts and depended upon statutory interpretation. See *Dillon Real Estate v. City of Topeka*, 284 Kan. 662, 665, 163 P.3d 298 (2007) (de novo standard applies to summary judgment review where facts undisputed); *Bomhoff v. Nelnet Loan Services, Inc.*, 279 Kan. 415, 419-20, 109 P.3d 1241 (2005) (same); *Schmidtlien Electric, Inc. v. Greathouse*, 278 Kan. 810, 819, 104 P.3d 378 (2005) (statutory interpretation is question of law providing for de novo appellate review).

The focus of this appeal is the interpretation of the survivors' benefits provision of the KAIRA and the applicability of the KUSDA to the determination of whether there is a survivor eligible for those benefits. As we interpret these statutes, the fundamental rule is that we must give effect to the intent of the legislature as expressed. Thus, when the language of a statute is plain and unambiguous, we must give effect to that language rather than determine what the law should or should not be, speculate as to legislative intent, add something not readily found in the statute, resort to canons of statutory construction, or consult legislative history. *In re Adoption of A.A.T.*, 287 Kan. 590, 627, 196 P.3d 1180 (2008).

## K.S.A. 40-3103(x) and (y)

The first provisions to which we apply these rules are those allowing survivors' benefits under the KAIRA, K.S.A. 40-3101 *et seq.*, specifically K.S.A. 40-3103(x) and (y). The KAIRA is designed to reduce personal injury litigation arising from automobile accidents

and, when litigation does occur, provide the accident victim prompt payment for certain economic losses without having to await the outcome of a suit against the tortfeasor. To that end, and subject to exceptions that do not apply under the facts presented, K.S.A. 40-3104 mandates liability insurance for automobiles operated on Kansas highways. Further, K.S.A. 40-3107 requires that each such insurance policy includes PIP benefits that provide coverage for disability, funeral expenses, medical and rehabilitation expenses, as well as substitution and survivors' benefits. *Chamberlain v. Farm Bureau Mut. Ins. Co., Inc.*, 36 Kan. App. 2d 163, 172, 137 P.3d 1081 (2006); see K.S.A. 40-3103(q) (defining "personal injury protection benefits"). The Farmers auto insurance policy at issue in this case provided the required PIP benefits, including survivors' benefits.

The KAIRA's provisions regarding survivors' benefits are found in K.S.A. 40-3103(x) and (y). K.S.A. 40-3103(x) defines "survivor" and states that the term "means a decedent's spouse, or child under the age of 18 years, where death of the decedent resulted from an injury." The circumstances under which benefits are paid to a survivor and the terms of the payment are provided for in K.S.A. 40-3103(y), which states:

" 'Survivors' benefits' means total allowances to *all survivors* for: (1) Loss of an injured person's monthly earnings after such person's death, up to a maximum of not less than $900 per month; and (2) substitution benefits following the injured person's death. Expenses of the survivors which have been avoided by reason of the injured person's death shall be subtracted from the allowances to which survivors would otherwise be entitled, and survivors' benefits shall not be paid for more than one year after the injured person's death, less the number of months the injured person received disability benefits prior to such person's death. For purposes of this subsection, monthly earnings shall include, in the case of a person who was a social security recipient or a retirement or pension benefit recipient, or both, at the time of such injured person's death, 1/12 of the annual amount of the difference between the annual amount of the social security benefits or the retirement benefits, or both, that such injured person was receiving at the time of such injured person's death and the annual amount of the social security benefits or the retirement benefits, or both, that the survivor is receiving after the time of such injured person's death." (Emphasis added.)

Farmers contends the plain language which limits the benefit to "all survivors" clearly rules out the eligibility for payment of sur-

vivors' benefits under the facts of this case because neither Timothy nor Michelle survived the collision and the couple had no children. *Cf. Hand v. State Farm Mut. Auto. Ins. Co.,* 2 Kan. App. 2d 253, 577 P.2d 1202 (1978) (noting that the no-fault statute defined "survivor" as a spouse or minor child and holding the decedent's spouse and child to be entitled to survivors' benefits measured by the loss of earnings occasioned by the death). Farmers further points to the fact that there was no evidence that the decedents' deaths were anything other than simultaneous.

In response, Polson and Fallis argue the statutory definition of "survivor" does not, on its face, preclude their claims. They assert that the legislature put no specific requirement in K.S.A. 40-3103(x) or K.S.A. 40-3103(y) that a decedent's spouse be *living* in order for benefits to be paid. To support their position, Polson and Fallis attempt to contrast the present case with *Nationwide Mut. Ins. Co. v. Gay,* 165 Ga. App. 293, 299 S.E.2d 611, *aff'd Gay v. Nationwide Mut. Ins. Co.,* 251 Ga. 104, 303 S.E.2d 117 (1983), in which the court focused on the Georgia No-Fault Act which used specific language requiring a living spouse.

In *Gay,* a husband and wife were killed in an automobile collision; the husband died approximately 1 and ½ hours after the wife had died. The plaintiff, a representative of the husband's estate, claimed that the husband's entitlement to full no-fault survivors' benefits vested upon his spouse's death, which would permit his estate to recover all benefits to which the surviving spouse would be entitled. The Georgia Court of Appeals rejected this theory and found the clear intent of Georgia's No-Fault Act was that "survivor's benefits is limited to spouses and children." 165 Ga. App. at 295. The language at issue provided:

" 'In the event of the death of the injured person who is survived by a spouse or dependent child or children, compensation under subparagraphs (a)(2)(B) and (a)(2)(C) of this Code section shall be payable after the death as though the deceased were alive but totally disabled, *the payment to be made to the spouse, if alive,* and otherwise to the child or children or the person having legal custody of any child or children for the use of the spouse or children as though awarded as a year's support for the spouse or children, or both. Survivor's benefits shall be payable at least monthly until exhausted.' " (Emphasis added.) 165 Ga. App. at 294-95 (quoting Ga. Code Ann. § 56-3403b[b]).

In determining legislative intent, the Georgia Court of Appeals observed that the No-Fault Act, in addition to providing a certain and severely restricted class of beneficiaries for survivor's benefits, did not provide that a surviving spouse's rights survived his or her own death. Nor did the Act state that the surviving spouse had a vested right to the limits of coverage under the policy immediately upon the death of the insured. Instead, the Act stated that the spouse was to receive periodic payments only if he or she was alive, and it contained no provision for a lump sum payment.

The Georgia appellate court determined that one purpose of such benefits was "to provide certain minimal financial protection for those 'most likely to suffer financially from the death [of the insured].' [Citation omitted.]" 165 Ga. App. at 296. It was held that the estate of the husband was not entitled to recover PIP survivors' benefits under the wife's automobile insurance policy.

Polson and Fallis focus on the fact that, in contrast to the Georgia statutory language, Kansas' survivors' benefits provisions do not contain similar language regarding benefits being paid to "the spouse, if alive." In making this argument, Polson and Fallis lose sight of the common meaning of the term "survivor," which means "[o]ne who outlives another." Blacks Law Dictionary 1486 (8th ed. 2004); see also Webster's II New College Dictionary 1110 (1999) (defining "survive" as "to remain alive or in existence"). In light of the common meaning of "survivor," the limited class of beneficiaries who have the right to survivors' benefits under K.S.A. 40-3103(y)—*i.e.*, spouses and minor children—must have remained alive after the death of the insured in order to have a right to survivors' benefits.

The words "if alive" found in the Georgia statute do not add a requirement over and above what is required by the word "survivor." The words "if alive" might add clarity if a court was facing the issues presented in *Gay* where the evidence established that one spouse survived the other but died before benefits could be paid, giving rise to issues of whether the benefit vests immediately and whether the surviving spouse's rights survive his or her own death. See 165 Ga. App. at 295. But those issues do not arise if, as in this case, there is no evidence that one spouse survived the other.

Other provisions of the KAIRA echo the legislative intent that a decedent's spouse must have outlived the decedent in order to be paid or entitled to receive survivors' benefits. For example, in K.S.A. 40-3103(y), the legislature defines "survivors' benefits," in part, as "total allowances to all survivors for: (1) Loss of an injured person's monthly earnings after such person's death, up to a maximum of not less than $900 per month." The benefits for the loss of the decedent's earnings are paid for no more than 1 year, and the monthly amount is offset by the expenses of the survivors which have been avoided by reason of the injured person's death. These provisions, like those in Georgia, reflect the clear legislative purposes of no-fault survivors' benefits: to provide certain financial protection for those most likely to suffer financially from the loss of income caused by the death of the insured—a spouse and children. Payment of benefits to a spouse who died simultaneously and did not suffer the spouse's loss of income does not further this purpose and would be contrary to the clear and unambiguous language that limits benefits to "those who remain alive after the death" of another, *i.e.*, those who are a "survivor." See *Gay*, 165 Ga. App. at 296.

Neither Polson nor Fallis advance any evidence that either Timothy or Michelle outlived the other. Therefore, there is no evidence to support a finding that either Timothy or Michelle was a survivor of his or her spouse.

## *KUSDA*

In fact, Polson and Fallis rely on the *lack* of evidence to invoke the provision of the KUSDA which provides that "an individual who is not established by clear and convincing evidence to have survived the other individual by 120 hours is deemed to have predeceased the other individual." K.S.A. 58-709. Polson and Fallis argue that because Timothy and Michelle would be deemed to have *predeceased* one another under the language of K.S.A. 58-709, it could also be said that each decedent would be deemed to have *survived* the other. To that end, Polson and Fallis argue, each decedent's assets should include survivors' benefits and those assets should pass to his or her heirs. They argue that because the leg-

islature saw fit to provide guidance for property division in the event spouses die within 120 hours of each other pursuant to K.S.A. 58-709, one could draw the logical conclusion that the legislature also intended each spouse under the present circumstance—having suffered simultaneous deaths in an automobile accident—to be considered "survivors" of each other for purposes of receiving survivors' benefits under K.S.A. 40-3103.

To some extent, the KUSDA was enacted to deal with the problem Polson and Fallis face, *i.e.*, the difficulty of proving whether a person survived. This difficulty existed at common law because there was no recognized presumption of either survivorship or simultaneous death. See *Estate of Nancy Schweizer v. Estate of Roland Schweizer*, 7 Kan. App. 2d 128, 128, 638 P.2d 378 (1981). In order to address the difficulty, at least in some specified circumstances, the National Conference of Commissioners on Uniform State Laws drafted a Uniform Simultaneous Death Act (USDA), which Kansas adopted, K.S.A. 58-708 *et seq.*

The practical effect of the KUSDA is that it may operate to show survivorship, as is illustrated by the decision in *Schweizer*. In *Schweizer*, Roland and Nancy Schweizer were killed in an accident in which it was impossible to determine the order of death. The administratrix of Nancy's estate filed a claim in Roland's estate for a spouse's share. Affirming the district court's conclusion that neither Nancy nor her distributees had an interest in Roland's estate, the Court of Appeals gave the following explanation of the application of the KUSDA:

"In this case, the estate of Mrs. Schweizer, because she is presumed to have died before Mr. Schweizer, is not entitled to a share. Likewise, Mr. Schweizer's estate is not entitled to any share of Mrs. Schweizer's estate, because in her probate case she is presumed to have survived him." 7 Kan. App. 2d at 129.

Nevertheless, as Farmers notes, even though numerous states have adopted the USDA, there appears to be no case law or other authority to support the application of the USDA to survivors' benefits as requested by Polson and Fallis.

Without guiding authority, the district court rejected Polson's and Fallis' attempt to invoke the KUSDA, determining the KAIRA

was a specific statute that controlled over the more general KUSDA. See *Chelsea Plaza Homes, Inc. v. Moore*, 226 Kan. 430, 601 P.2d 1100 (1979) (general statutes do not apply to an area of substantive law that is the subject of other specific legislation).

On our review, we affirm the district court's decision that the KUSDA does not apply under the facts of this case. While we do not necessarily disagree with the district court's reasoning, there are more basic reasons for determining the KUSDA does not allow both parties to claim survivors' benefits: (1) the KUSDA specifies four circumstances to which the provisions apply, and none of those circumstances applies in this case, and (2) the results would be contrary to the language of the statute and its purpose.

Regarding the first reason, the circumstances to which the KUSDA apply are defined in K.S.A. 58-709, which provides in part:

"Except as provided in K.S.A. 58-713, if the title to property, the devolution of property, the right to elect an interest in property, or the right to exempt property, homestead or family allowance depends upon an individual's survivorship of the death of another individual, an individual who is not established by clear and convincing evidence to have survived the other individual by 120 hours is deemed to have predeceased the other individual. This section does not apply if its application would result in a taking of intestate estate by the state."

These categories, although general, are not all encompassing. As other courts have recognized, the USDA "does not apply to all types of property interests, and its language is quite specific as to those interests affected by the 120-hour survival rule." *Heirs of Ellis v. Estate of Ellis*, 71 S.W.3d 705, 711 (Tenn. 2002) (Tennessee Act did not apply to tenancy by the entirety, which under state law cannot be passed by will; Tennessee Act nonuniform, applying only to homestead and other allowances, elective share, intestate succession, and wills).

If we enumerate the four circumstances for purposes of analysis, the presumption provided for by the KUSDA applies only when one individual's survivorship of another individual determines: (1) title to property, (2) the devolution of property, (3) the right to elect an interest in property, or (4) the right to exempt property, homestead, or family allowance. None of these categories applies to Timothy or Michelle's inchoate interest in survivors' benefits.

Neither Timothy nor Michelle had the right to transfer an interest in the benefits, had the right to elect an interest in the benefit, or had the right to exempt the benefit. See *Schweizer*, 7 Kan. App. 2d at 129 (citing *In re Estate of Moran*, 77 Ill. 2d 147, 395 N.E.2d 579 [1979]; *Brundige v. Alexander*, 547 S.W.2d 232, 234 [Tenn. 1976]) (purpose of USDA is to provide substantive law to govern the devolution of *property* when there is no evidence that the deaths occurred other than simultaneously); see also, *e.g.*, *In re Estate of Parisi*, 328 Ill. App. 3d 75, 80, 765 N.E.2d 123 (2002) (stating "[e]ach individual's property passes to that individual's relatives and not to the other person's relatives . . . . Thus, neither decedent inherits from the other.").

Moreover, to apply the provisions in this circumstance would be contrary to the clear language and recognized intent of the USDA, which "is designed to further the decedent's presumed intention of passing property only to persons who can personally benefit from it." Restatement. (Third) of Property, Wills and Other Donative Transfers § 1.2, comment d (1999). This intent parallels that of the survivors' benefits provision of the KAIRA, which is aimed at benefitting those who suffer the loss of the decedent's income.

Polson and Fallis attempt to reverse this effect and create a presumption of survivorship that is contrary to the presumption created by the statute. Again, the statute provides that "an individual who is not established by clear and convincing evidence to have survived the other individual by 120 hours is deemed to have predeceased the other individual." K.S.A. 58-709. Applied to the facts of this case, because it cannot be established that Michelle survived Timothy by more than 120 hours, she is deemed to have predeceased Timothy. Likewise, because it cannot be established that Timothy survived Michelle by more than 120 hours, he is deemed to have predeceased Michelle. As a result, under the presumption created by the statute, neither would receive survivors' benefits. In contrast, to apply a presumption of survivorship, as Polson and Fallis attempt to do, would allow the insurance benefit to be considered the property of Michelle and Timothy even though Michelle and Timothy would not personally enjoy the use of the property.

We conclude, therefore, that the KUSDA does not apply to a determination of whether an individual is a survivor entitled to survivors' benefits under K.S.A. 40-3103(y).

*Extension to Estates*

Polson and Fallis also argue that as parents of the decedents and representatives of the heirs of the decedents, they should be entitled to receive survivors' benefits, even though they themselves admittedly do not fall within the statutory definition of "survivor." To support this contention, Polson and Fallis cite cases from Pennsylvania in which courts have held the decedents' estates were entitled to recover benefits under Pennsylvania's No-Fault Act.

In *Wingeart v. State Farm Mut. Auto. Ins. Co.*, 302 Pa. Super. 524, 449 A.2d 40 (1982), the court held the deceased passenger's estate was a "survivor" entitled to recover "work loss benefits" under the Pennsylvania No-Fault Act. The court relied on *Freeze v. Donegal Mut. Ins. Co.*, 301 Pa. Super. 344, 350, 447 A.2d 999 (1982), where it was questioned whether an estate could recover "work loss benefits," as opposed to "survivors loss benefits." The *Freeze* court, in a split decision, refused to strictly construe its No-Fault Act and thereby limit the recovery of work loss benefits to the statutorily defined class of "survivors" that applied to survivors' benefits. Such an interpretation of the No-Fault Act would, according to Pennsylvania courts, abolish " 'the right of the deceased victim's estate to recover from a tortfeasor the earnings the deceased victim would have contributed to his estate had he survived.' " *Freeze*, 301 Pa. Super. at 351 (quoting *Heffner v. Allstate Ins. Co.*, 265 Pa. Super. 181, 191, 401 A.2d 1160 [1979]). Consequently, the *Freeze* court held the estate of the deceased victim was entitled to recover work loss benefits under the No-Fault Act. See also *Reynolds v. Nationwide Mut. Ins. Co.*, 303 Pa. Super. 31, 32, 449 A.2d 62 (1982) (estate of decedent was entitled to recover work loss benefits under state No-Fault Act, and fact that decedent was a minor who never worked did not preclude recovery); *cf. School Sisters of Notre Dame v. State Farm*, 476 N.W.2d 523, 525 (Minn. App. 1991) (a nonhuman, such as a nonprofit corporation,

could not be considered a "dependent" for purposes of survivors' economic loss benefits under Minnesota's No-Fault Act).

However, in none of the cases cited by Polson and Fallis was the estate of the decedent held to be entitled to *survivors' benefits*. Rather, estates were held to be entitled to "work loss benefits" under Pennsylvania law. In *Capanna v. Travelers Ins. Co.*, 355 Pa. Super. 219, 224, 513 A.2d 397 (1986), the court explained that under Pennsylvania law, work loss benefits and survivors' benefits are separate and distinct in nature: "A work loss benefit is not a form of survivor's benefit, but is in the nature of reimbursement to the estate of the deceased for income he or she would probably have earned but for the accident." Emphasizing that each is a separate type of benefit, the court further stated that "the work loss benefit intended to reimburse the estate of the victim for lost earnings, and survivor's benefits to reimburse *surviving family members* for what they would have received had the victim lived." (Emphasis added.) 355 Pa. Super. at 224.

Under the Pennsylvania cases, to recover survivors' benefits one must meet the definition of survivor by falling within the limited class designated—spouse or dependent relative—and have incurred a loss because the decedent would have contributed income to the survivor if the decedent had not sustained the fatal injury. *Allstate Ins. Co. v. Heffner*, 491 Pa. 447, 421 A.2d 629 (1980).

As in Pennsylvania, under the KAIRA an individual must establish that he or she is a spouse or minor child who survived the death of an insured and suffered a loss of income because of the decedent's fatal injury in order to qualify for survivors' benefits. Neither Polson nor Fallis can establish that Timothy or Michelle qualified for survivors' benefits under K.S.A. 40-3103(y) and, therefore, as their representatives they cannot claim the benefits.

As a final argument, Polson and Fallis attempt to save their claim for survivors' benefits by raising hypothetical situations that are irrelevant to this case. Their attempt does not change the clear statutory language defining "survivor" and "survivors' benefits," which does not incorporate the deceased spouse of the decedent or the parent/representative of the decedent.

The district court did not err in granting summary judgment in favor of Farmers on this issue.

### Attorney Fees

In the district court, Polson and Fallis sought attorney fees pursuant to K.S.A. 40-256. This statute provides:

"That in all actions hereafter commenced, in which judgment is rendered *against any insurance company* as defined in K.S.A. 40-201 . . . if it appear[s] from the evidence that such company . . . has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action, including proceeding upon appeal, to be recovered and collected as a part of the costs." (Emphasis added.)

Obviously, judgment was rendered in favor of Farmers, not against Farmers. Therefore, attorney fees were not allowed under K.S.A. 40-256. Polson and Fallis reargue their contention that judgment should have been granted in their favor and that Farmers should not have denied their claims for survivors' benefits without considering provisions of the KUSDA. As previously discussed, however, the KUSDA has no application to this case. Polson and Fallis fail to provide any statutory authority justifying attorney fees. See *Johnson v. Westhoff Sand Co., Inc.*, 281 Kan. 930, 939, 135 P.3d 1127 (2006) (attorney fees cannot be awarded absent statutory authority or agreement).

The district court did not err in failing to award attorney fees to Polson and Fallis. Summary judgment was properly granted in favor of Farmers.

Affirmed.